IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**UNITED STATES OF AMERICA,**

**Plaintiff,**

v.

**SHANRIE CO., INC., DAN SHEILS, NETEMEYER ENGINEERING ASSOCIATES, INC., FOREST HILLS, L.P., the MARK TWAIN TRUST, PAMELA BAUER, and BRIAN BAUER,**

**Defendant.**                                                    No. 07-491-DRH

### ORDER

**HERNDON, Chief Judge:**

### I. Introduction

On July 5, 2007, the United States filed this action in this Court alleging that Defendants violated the **Fair Housing Act, as amended, 42 U.S.C. §§ 3601-3619 ("FHA")** by failing to design and construct the Hartman Lane and Rockwood Court apartments (collectively the "Rockwood" apartments) in Shiloh, Illinois in compliance with the FHA's requirements regarding accessibility for persons with disabilities. On February 20, 2009, the United States filed a motion for summary judgment on liability (Doc. 102). On July 10, 2009, Defendants Shanrie Co., Inc., Dan Sheils, Netemeyer Engineering Associates, Inc., Forest Hills, L.P., Mark Twain Trust, Pamela Bauer, and Brain Bauer (collectively "Defendants") filed a response to

Plaintiff's motion, claiming that the Defendants had forwarded Plaintiff's counsel an offer of judgment and proposed consent order (Doc. 147). Plaintiff filed a reply arguing that Defendants' response did not address the arguments raised by Plaintiff's motion and was thus not responsive (Doc. 149). Due to Defendant's failure to respond to Plaintiff's motion for summary judgment, the Court considers Defendants' failure to respond an admission of the merits of Plaintiff's motion.[1] **LOCAL RULE 7.1(g).**

## II. Factual Background

The United States contends that each of the Defendants played some role in the design and construction of the Rockwood Court and Hartman Lane apartments. Shanrie built the Rockwood Court and Hartman Lane apartments. Sheils is the president of Shanrie. Sheils developed the design for the Hartman Lane apartments, and the design was later used for the one-bedroom apartments at Rockwood Court. Sheils hired Netermeyer Engineering Associates, Inc. to create building plans based on Sheils concepts and the sealed plans, provided by Patrick Netemeyer, were used to obtain the building permits for Hartman Lane Aprtments. The Mark Twain Trust held title to the property at the time the buildings were constructed and Brian Bauer was the beneficiary of the trust. Both Brian Bauer and Pamela Bauer retained Sheils to build the apartments at Rockwood Court and

---

[1] **LOCAL RULE 7.1(g)** provides that: "Failure to file a timely response to a motion may, in the court's discretion, be considered an admission of the merits of the motion." **LOCAL RULE 7.1(g)**.

Pamela Bauer was involved in the decision to use the same one-bedroom design used at Hartman Lane in the one-bedroom apartments at Rockwood Court. Forest Hills gained ownership of the Rockwood Court property when Brian Bauer and Pamela Bauer dissolved the Mark Twain Trust and transferred its holdings to Forest Hills, L.P.. Forest Hills bought the Hartman Lane apartment from Dan Sheils on October 31, 2006. Forest Hills is owned and controlled by Brian Bauer and Pamela Bauer.

In 1996, Brian Bauer, Pamela Bauer, and Dan Sheils decided to build apartment buildings on lots located in the Rockwood subdivision in St. Clair County. The lots were originally owned by the Mark Twain Trust. The Rockwood apartments consists of two complexes, one with three buildings on Hartman Lane (the "Hartman Lane" apartments) and one with four buildings on Rockwood Court (the "Rockwood Court" apartments).

The Hartman Lane apartments consist of three buildings located in the Rockwood subdivision. Prior to construction, Brian Bauer and Pamela Bauer, through the Mark Twain Trust, sold the lots where the apartments would be built to Dan Sheils. Shanrie and Sheils (the "Shanrie Defendants") hired Netemeyer to create building plans based on concepts presented by Sheils. The floor plans and site plans for Hartman Lanes were prepared by Netemeyer and the Shanrie Defendants used the plans to obtain building permits. Since their completion in approximately September 1997, none of the ground floor units in the Hartman Lane apartments have had an accessible route to the entrances.

The Rockwood Court apartments consist of four buildings located on

lots 23 and 25-26 in the Rockwood subdivision. The Bauers hired Leonard Land of L&S Builders Design, Inc. to prepare plans for two-bedroom apartment building. However, for the one-bedroom units, the Bauers used the same floorplans as those used by the Shanrie Defendants for the Hartman Lane apartments. Sheils and Shanrie were hired as the contractor for the apartments. The building located on lot 23was ready for occupancy in July 1999 while the building on lots 25-26 was ready for occupancy by January 2000. The four buildings each have two breezeways leading to the units. Three of the breezeways are accessible while five of the breezeways are not accessible. While new ramps have been constructed at two of the entries, the landings associated with these ramps are not in compliance with the FHA.

### III. Discussion

**A. Summary Judgment Standard**

Summary judgment is appropriate under the **FEDERAL RULES OF CIVIL PROCEDURE** when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." **FED. R. CIV. P. 56(c);** *Celotex Corp. v. Catrett*, **477 U.S. 317, 322 (1986).** The movant bears the burden of establishing the absence of factual issues and entitlement to judgment as a matter of law. *Wollin v. Gondert*, **192 F.3d**

616, 621-22 (7th Cir. 1999). The Court must consider the entire record, drawing reasonable inferences and resolving factual disputes in favor of the non-movant. *Schneiker v. Fortis Inc. Co.*, 200 F.3d 1055, 1057 (7th Cir. 2000); *Baron v. City of Highland Park*, 195 F.3d 333, 337-38 (7th Cir. 1999). In response to a motion for summary judgment, the non-movant may not simply rest on the allegations as stated in the pleadings. Rather, the non-movant must show through specific evidence that an issue of fact remains on matters for which the non-movant bears the burden of proof at trial. *Walker v. Shansky*, 28 F.3d 666, 670-71 (7th Cir. 1994), *aff'd*, 51 F.3d 276 (citing *Celotex*, 477 U.S. at 324).

No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (citations omitted); *accord Starzenski v. City of Elkhart*, 87 F.3d 872, 880 (7th Cir. 1996); *Tolle v. Carroll Touch, Inc.*, 23 F.3d 174, 178 (7th Cir. 1994). However, when all the Court has before it are the diametrically opposed statements of the parties on the critical and ultimate issues of fact, the Court, not in a position to make credibility findings, must pass the case to the next phase of litigation.

B.  **The Fair Housing Amendments Act of 1988**

The Fair Housing Amendments Act of 1988 ("FHAA") added "handicap" as another form of discrimination outlawed by the original Fair Housing Act, which

was passed in 1968.  The "FHAA" made it unlawful to "discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of - (A) that buyer or renter; (B) a person residing in or intending to reside in that dwelling after it is sold, rented, or made available; or (C) any person associated with that buyer or renter." **42 U.S.C. §3604(f)(1)**.  In addition, **Section 3604(f)(2)** makes it unlawful to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, because of a handicap of - (A) that person."  The accessibility requirements include making the public use and common use portions of such dwelling readily accessible, ensuring that all doors are wide enough for wheelchairs to pass through and that all premises have certain "features of adaptive design."  *Id.* **at § 3604(f)(3)(C)**.[2]

Congress granted the Secretary of HUD the authority to promulgate regulations to implement the FHA and provide technical assistance to help achieve the Act's accessibility requirements.  *Id.* **at §§3601, 3604(f)(5)(C)**.  HUD issued implementing regulations in 1989, which discussed the FHA's design and construction requirements.  **24 C.F.R. § 100.200**.  Guidelines setting minimum standards for compliance with the design and construction requirements were issued two years later.  **56 Fed. Reg. 9473-9515**.

Although the FHAA was enacted nearly 20 years ago, few cases have

---

[2] These features include: "(I) an accessible route into and through the dwelling; (II) light switches, electrical outlets, thermostats, and other environmental controls in accessible locations; (III) reinforcements in bathroom walls to allow later installation of grab bars; and (IV) usable kitchens and bathrooms such that an individual in a wheelchair can maneuver about the space." *Id*.

addressed some of the issues presented in this case. Therefore, as background, the Court begins by considering the intent of Congress in its enactment of the FHAA. According to the House of Representatives Committee Report ("House Report"), Congress intended that the FHAA be a "Clear pronouncement of a national commitment to end the unnecessary exclusion of persons with handicaps from the American mainstream." **H.R. Rep. 100-711, 18**. In addition, the House Report on the FHAA provides, "[b]ecause persons with mobility impairments need to be able to get into and around a dwelling unit (or else they are in effect excluded because of their handicap), the bill requires that in the future covered multifamily dwellings be accessible and adaptable... These modest requirements will be incorporated into the design of new buildings, resulting in features which do not look unusual and will not add significant additional costs." *Id*. The House Report makes it clear that the FHAA prohibits acts that have the effect of causing discrimination, not just intentional discrimination.[3] Furthermore, the United States Supreme Court has found that when interpreting the Fair Housing Act, courts are to give effect to the "broad remedial intent of Congress embodied in the Act." ***Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380 (1982)**.

---

[3] "The Committee understands that housing discrimination against handicapped persons is not limited to blatant, intentional acts of discrimination. Acts that have the effect of causing discrimination can be just as devastating as intentional discrimination. A person using a wheelchair is just as effectively excluded from the opportunity to live in a particular dwelling by the lack of access into a unit and by too narrow doorways as by a posted sign saying "No Handicapped People Allowed." In Alexander v. Choate, the Supreme Court observed that discrimination on the basis of handicap is 'most often the product, not of invidious animus, but rather of thoughtlessness and indifference -- benign neglect' and mentioned 'architectural barriers' as one factor that can have a discriminatory effect." **H.R. Rep. 100-711, 25.**

## C. Analysis

The United State's motion for summary judgment asserts that the design and construct of the Rockwood apartments violates the FHA and that each of the Defendants is liable for the violations. (Doc. 102). The United States is seeking summary judgment on the issue of liability only. The United States' motion for summary judgment argues that 1) the Rockwood apartments are subject to the accessibility requirements mandated by the FHA; 2) the Rockwood apartments were not designed and constructed in compliance with the FHA; 3) each Defendant is liable for the violations; and 5) Defendants have engaged in a pattern or practice of discrimination and/or a denial of rights to a group of persons pursuant to **42 U.S.C. § 3614**. (Doc. 102).

Defendants have filed a response to the United States' motion for summary judgment, only stating that they have forwarded United States's counsel an offer of judgment and proposed consent judgment. Defendants have not responded to the specific allegations set out in the United States' motion. Under **FEDERAL RULE OF CIVIL PROCEDURE 56(e)(2)**, an opposing party is required to respond to the motion by providing affidavits and other discovery material "[setting] out specific facts showing a genuine issue for trial." **FED. R. CIV. P. 56(e)(2)**. The rule further provides that "[i]f the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." **FED. R. CIV. P. 56(e)(2)**. Further, under **LOCAL RULE 7.1(g)**, the Court finds that Defendants' failure to

respond is an admission of the merits of the United States summary judgment motion. The Court will consider each of the arguments made by the United States in turn to determine the appropriateness of the merits, reserving the question of specific violations for the end.

*1. Rockwood is subject to the accessibility requirements mandated by the FHA*

The FHA provides that discrimination pursuant to the Act includes a failure to design and construct covered multifamily dwellings built after March 13, 1991 in compliance with the accessibility features specified in the statute. **42 U.S.C. § 3604(f)(3)**. **Section 3604(f)(7)** defines the term "covered multifamily dwellings" as "(A) buildings consisting of four or more units if such buildings have one or more elevators; and (B) ground floor units in other buildings consisting of four or more units." It is undisputed that Rockwood consists of covered multifamily dwellings as defined by the statute at both the Hartman Lane apartments and Rockwood Court apartments. Rockwood does not contain any buildings with elevators, but the buildings do consist of 4 or more units.[4] Therefore, only the ground floor units are subject to the accessibility requirements contained in the FHA.

*2. Each Defendant is Liable for the Violations*

The United States alleges that each Defendant is liable for the violations

---

[4] Rockwood consists of seven non-elevator two-story buildings, with seventeen ground floor units at the Hartman Lane apartments and twenty-eight ground floor units at the Rockwood Court apartment. Therefore, there are 45 ground-floor units that are subject to the accessibility requirements of the Act.

of the FHA.  None of the Defendants dispute the FHA violations alleged by the United States.  Therefore, the Court finds that all of the Defendants are liable for the violations.

*3. Defendants have engaged in a pattern or practice of discrimination and/or a denial of rights to a group of persons*

The Attorney General may commence a civil suit if he believes "that any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights granted by [the FHA], or that any group of persons has been denied any of the rights granted by [the FHA] and such denial raises an issue of general public importance…" **42 U.S.C. § 3614(a)**.  In this case, there is no question that Rockwood was designed and constructed in a way that totally excludes people with mobility impairments in violation of the FHA.  As evinced by the legislative history discussed above, this exclusion amounts to discrimination against disabled persons, which is undoubtedly an issue of great "general public importance."  **See *United States v. Taigen & Sons, Inc.*, 303 F. Supp.2d 1129, 1138-39 (D. Idaho 2003)**: ***United States v. Hartz Constr. Co.*, No. 97-8175, 1998 WL 42265 at \*2 (N.D. Ill. 1998) ("It is of course obvious that housing that is inadequately designed and constructed to serve persons with disabilities denies that class of persons rights granted by the Act-and…that 'denial raises an issue of general public importance.'  Any contention to the contrary is totally myopic or worse.")**.  In addition, courts have consistently refrained from reviewing

the Attorney General's determination that a matter is of general public importance. ***See United States v. Hallmark Homes, Inc.*, 2003 WL 23219807 at \*5 (D. Idaho 2003)**. This Court agrees that such a determination is better left to the discretion of the Attorney General. Having satisfied the "general public importance" prong, the Court need not determine whether Defendants have engaged in a pattern or practice of discrimination.

   *4. The Design and Construction of Rockwood Violates the FHA*

The United States asserts, and this Court agrees, that the design and construction of Rockwood violates the accessibility requirements of the FHA. The degree of non-compliance at the Rockwood apartments is extensive. Of the twenty-eight ground-floor units at Rockwood Court, every unit violates the Act to some degree and the violations involve all of the Act's accessibility requirements. The seventeen ground floor units at the Hartman Lane apartments are likewise non-compliant. Almost every accessibility requirement in the Act is violated in some way by Rockwood. It is quite apparent that Rockwood has been constructed in a way in which to make it totally inaccessible to handicapped individuals. The Defendants do not dispute any of the violations.[5]

The United States notes the following violations at Rockwood: 1) the public and common use areas are not accessible to and usable by persons with

---

[5] As discussed above, the Defendants have not filed a responsive pleading to the United States' motion for summary judgment. Rather, the Defendants filed a response stating that they have submitted a proposed Consent Judgment to Plaintiffs which also addresses possible retrofits to the property. Their silence to the arguments presented in the United States' motion is deemed an admission of the merits.

disabilities because a) there are no accessible routes[6] to the ground floor units in the three buildings at Hartman Lane; b) of the four buildings which comprise the Rockwood Court apartments, three of the breezeways are compliant while the remaining five do not meet the Guidelines;[7] c) there are no accessible routes to resident mailboxes, rent drop boxes, and dumpsters;[8] d) there is no accessible parking at any of the units; e) all but eight of the forty-five entrances have a step up at the front door;[9] and f) at both locations objects such as light fixtures, electric meters, and phone boxes protrude more than 4 inches into the walkway, there is no cane detectable barrier on the underside of the exposed stairs, and, with the exception of one unit at Rockwood Court, the front door hardware is knob-style instead of the required lever-style; 2) all of the doors for passage into and within the ground floor units at both Hartman Lane and Rockwood Court are less than the required 31 5/8 inch clear opening required to allow passage by a person in a

---

[6] According to the Guidelines and ANSI, accessible routes may not have steps and must be sloped no more than 5% for walks or 8.33% for ramps with handrails. **56 Fed. Reg. at 9504-05, ANSI A117.1 (1986) 4.3, 4.8.**

[7] Of the five non-complaint breezeways at Rockwood Court, three are inaccessible because of steps or a 1" change in level. At the two remaining non-compliant breezeways, ramps have been constructed but they are not compliant with the Guidelines.

[8] At Hartman Lane, the resident mailboxes and rent drop boxes are located in the beezeways which are inaccessible. The resident mailboxes as Rockwood Court are located along the street and can only be accessed by traveling into the street. Mailboxes at both locations are mounted higher than the acceptable reach range of 54 inches. Further, dumpsters at both locations are located in the parking area and can only be reached by traveling into vehicular pathways. There are also no marked routes to the mailboxes or dumpsters. *See* **56 Fed. Ref. at 9504-05; ANSI A117.1 (1986) 4.2.5, 4.2.6.**

[9] Of the entrances that do not have a step, Entries 5 and 8 located at Rockwood Court, those entrances do not provide the required 60 inch x 60 inch landing required to allow for turning to enter the door.

wheelchair; 3) there is not an accessible route into and through the units;[10] 5) thermostats at both Hartman Lane and Rockwood Court are inaccessible and the kitchen outlet on the stove wall at Hartman Lane is not within reach range;[11] 4) there are no reinforcements in bathroom walls for the installation of grab bars; and 5) bathrooms are not usable such that a person in a wheelchair can maneuver about the space.[12] The United States is granted summary judgment on each of these issues.

**D.    Remedial Plan**

The United States has further requested that the Court order the Defendants to submit a remedial plan with appropriate timetables detailing how they

---

[10] An accessible route is "a continuous unobstructed path connecting accessible elements and spaces...that can be negotiated by a person with a severe disability using a wheelchair and that is also safe for and usable by people with other disabilities." **24 C.F.R. §100.201.** At Rockwood, all unit entries exceed the 1/2 inch permitted by the Guidelines and the exterior patio and storage room have a step at the door.

[11] The Guidelines require that controls, including light switches, electrical outlets, and thermostats, can be no higher than 48 inches above the floor in unobstructed locations, while the ANSI standards permit an increased height of 54 inches. *See* **54 Fed. Reg. at 9507; ANSI A117.1 (1986) 4.2.5, 4.2.6.** Thermostats at Hartman Lane are more than 56 inches above the floor and a kitchen outlet on the stove wall is obstructed by the stove, while at Rockwood Court, in one of the two-bedroom apartments, the thermostat was 64 inches above the floor.

[12] The Guidelines provide that if a "clear floor space at least 30 inches by 48 inches that allows a parallel approach by a person in a wheelchair is provided" then compliance with the usability provision is ensured. **56 Fed. Reg. at 9511-9515**. In the bathrooms in the one-bedroom units at both Hartman Lane and Rockwood Court, the required clear floor space and approach space to the tub is not provided. In the hall bathrooms in the two-bedroom units at Rockwood Court, the required clear floor space is not provided and the locations of the vanity and toilet do not provide the required space from the centerline of the vanity and toilet to the wall or other obstruction. The United States notes that while the hall bathroom in one unit of Rockwood Court, unit #46 has been modified, the modification do not comply with the Guidelines as the lavatory does not provide sufficient knee space and is not in a usable location. The master bathrooms in the two-bedroom units at Rockwood Court do not provide clear floor space or approach space.

plan to remedy the above described FHA violations. Damages are the only remaining issue in this case, since Defendants liability has been determined as a matter of law. As this Court has noted in a previous case, other courts have required similar remedial plans and such plans benefit the Court in its consideration of the matters and promote both the interests of efficiency and judicial economy. **See *United States v. Shanrie Co.,Inc.*, No. 05-306, 2007 WL 1749220 at \*3-4 (June 15, 2007). See, e.g. *United States v. Tanski*, 2007 WL 1017020, at \*25-26 (N.D.N.Y. Mar. 30, 2007); *Memphis Center for Indep. Living v. Grant*, Civ. No. 2:01-2069D (W.D. Tenn. June 3, 2005); *Fair Housing Counsil, Inc. v. Village of Olde St. Andrews*, Civ. No. 3:98-CV-630-H (W.D.Ky. Feb. 6, 2004)**. Further, the Court agrees that retrofitting is an appropriate remedy for FHA violations.

Therefore, the Court **ORDERS** Defendants to submit a remedial plan within 45 days of the date of this Order. The remedial plan shall include a detailed description, with deadlines, of how Defendants intend to retrofit both the Hartman Lane and Rockwood Court locations of Rockwood to bring it into full compliance with the FHA. The plan should also describe, if possible, how responsibility will be allocated amongst the Defendants. The United States is directed to respond within 30 days thereafter. The Court encourages the parties to work together to find a plan that is acceptable to all involved.

### IV. Conclusion

For the foregoing reasons, the United States motion for summary judgment on liability is **GRANTED**. Defendants are further **ORDERED** to submit a remedial plan within 45 days of the date of this Order.

**IT IS SO ORDERED.**

Signed this 14th day of August, 2009.

/s/    David R Herndon
**Chief Judge**
**United States District Court**