IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA,

Plaintiff,

v.

SHANRIE CO., INC., DAN SHEILS,
NETEMEYER ENGINEERING
ASSOCIATES, INC., FOREST HILLS, L.P.,
THE MARK TWAIN TRUST, PAMELA BAUER,
and BRIAN BAUER,

Defendants.                                              No.07-491-DRH

## ORDER

HERNDON, Chief Judge:

### I.  Background

Now before the Court is the issue of devising an appropriate remedial plan to address the Fair Housing Act ("FHA") violations at the Rockwood Court apartments and Hartman Lane apartments in Shiloh, Illinois.  On August 17, 2009 the Court granted summary judgment on the issue of liability in favor of Plaintiffs and ordered Defendants Shanrie Co., Inc., Dan Sheils, Netemeyer Engineering Associates, Inc., Forest Hills, L.P., the Mark Twain Trust, Pamela Bauer, and Brian Bauer (collectively "Defendants") to submit a proposed remedial plan detailing how they intend to retrofit Rockwood Court and Hartman Lane apartments to bring them into full compliance with the FHA (Doc. 150).  Defendants submitted a proposed remedial plan on October 1, 2009 (Doc. 151).  The United States filed a response on November 3, 2009 (Doc. 152).  In its response, the United States argued that the

Defendant's proposals were unacceptable and that the Defendants should be required to complete all of the retrofits in a timely manner.  The United States has voiced its objections on three areas of Defendants' proposed remedial order: (1) the timetable for completing the retrofits, (2) the retrofits at two of the buildings at Hartman Lane which Defendants have contended can not be retrofitted, and (3) the inspection of the retrofits.  The Court will discuss the parties arguments as to these three issues below.

## II.  <u>Analysis</u>

### A.    **Timetable for Retrofits**

Defendants' proposed remedial plan calls for retrofits to the common use areas to be completed in one year while they suggest that they be given a time line of three years to complete retrofits to the interior of the groundfloor units. However, the United States contends that such timetables are too long and would allow for continued discrimination.[1]  The United States instead suggests a timetable of six months for completion of accessible routes to the ground floor units and one year for retrofits to the unit interiors.  While this Court agrees that the timetables suggested by the Plaintiffs are unsubstantiated,[2] too lengthy, and would prevent

---

[1]  The United States does not object to the substance of the proposed retrofits for both the common use areas and interiors to the groundfloor units.

[2]  Defendants have provided no reasoning at to why they believe that the retrofits to the common use areas and interiors of the units would take one and three years respectively.  As the United States accurately points out, Defendants do not point to any technical or logistical issues preventing a timely completion of the retrofits and the retrofits in a recent, similar case involving apartments owned by the Shanrie Defendants were completed in a much shorter time period and required more extensive retrofits as the level of noncompliance was greater in that case.  ***See United States v. Shanrie Co., Inc.*, No. 05-**

disabled individuals in wheelchairs from even accessing the groundfloor units until such accessible routes are provided, the Court does not agree with the short time frames provided by the Government.   Instead, this Court has attempted to accommodate some of Defendants' concerns while ensuring that the retrofits are completed in a timely manner.   Therefore, the Court orders that all retrofits to the groundfloor unit interiors be completed within one (1) year of the date of this order, regardless of whether a unit becomes vacant during that timeperiod.   Further, Defendants shall provide accessible routes to the mailboxes and dumpsters, to the extent ordered in the remedial plan, within thirty (30) days and provide accessible routes to the groundfloor units within nine (9) months.

**B.     Retrofits to the Two Units Located at the Northeast Breezeway of 1679 Harman Lane**

Defendants proposed remedial plan also omits two units located at the Northeast Breezeway of 1679 Hartman Lane.  Defendants state in a footnote that, as a practical matter, an accessible route cannot be provided to those buildings due to the "existing terrain and site conditions."   Defendants have failed to provide any practical explanation as to why the two units can not be made accessible and only mention the impracticality of the retrofits to those units in a two-sentence footnote. Instead, Defendants merely state that there is no practical way to provide accessible routes to the two units and have not included the two units in their proposed retrofits.   However, Defendants' request is not a minor one.  Defendants' proposal

---

CV-306-DRH, 2008 WL 1722207, at *4-5 (S.D. Ill. April 10, 2009) ("*Shanrie I*").

would leave two whole units of the Rockwood complex, which the Court has already found to be in violation of the FHA, to go unremedied.  Such a proposal is unacceptable and would defeat the purposes of the FHA because it would leave some units unaccessible to disabled individuals.  ***See Bronk v Ineichen*, 54 F.3d 425, 429 (7th Cir. 1995).**  Further, Defendants have not made anything other than a bare assertion that the proposed retrofits are impractical or impossible due to the terrain and site conditions.  Therefore, the Court finds that the proposed retrofits should apply to all of the covered units including the two units located at the Northeast breezeway of 1679 Hartman Lane.

**C.     Neutral Inspector**

The United States also objects to the Defendants' proposed schedule for conducting an on-site inspection of the retrofits by a neutral investigator.[3]  The Government argues that the current schedule offered by Defendants would allow the inspection to occur before all of the retrofits were completed allowing some of the retrofitted apartments to go uninspected.  Instead, the United States requests that an inspection of the retrofits occur after all of the retrofits are completed in order to determine that all of the retrofits have been completed in compliance with the Court's Order.  The Court agrees with the United States that it is important to make sure that all retrofits have been completed in compliance with the Remedial Plan and as

---

[3]  While the United States objects to the schedule submitted by the Defendants, the Court notes that the United States does not object to a neutral inspector investigating the completed retrofits, the Government only objects to the time frame suggested by Defendants.

such finds that the retrofits should be inspected by a neutral inspector once *all* of the retrofits are completed.

### III.  Remedial Plan

The Court has thoroughly reviewed the arguments and proposals of both parties.  The Court notes that the Government does not object to the substance of the proposed retrofits offered by Defendants, except as to those issues previously discussed in this Order.  The Court also agrees, except to the extent previously discussed, that the submitted proposed retrofits are sufficient to remedy the FHA violations at Hartman Lane and Rockwood Apartments.  Accordingly, it is hereby **ORDERED** that Shanrie Company, Inc., Dan Sheils, Netemeyer Engineering Associates, Inc., Forest Hills, L.P., the Mark Twain Trust, Pamela Bauer, and Brian Bauer (collectively "Defendants") shall make the following retrofits to Hartman Lane Apartments and Rockwood Apartments, within the times specified:

1.      Within thirty (30) days of this Order, Defendants shall:

      a.      Hartman Lane Apartments

            1)      Provide an ANSI compliant accessible route to the mailbox and dumpster facilities by lowering mailboxes for ground floor units at every breezeway to no higher than 48" to flap and relocating and adding dumpster at west side of 1679 Hartman Lane at an accessible route serving each building.[4]

---

[4]  The Court notes that Defendants has also proposed to remedy the accessibility of the rent drop boxes located in the west breezeway of 1667 Hartman Lane by removing the rent drop box from that

      b.    Rockwood Apartments

          1)    Provide an ANSI compliant accessible route to the mailbox and dumpster facilities by assigning ground floor units to mailboxes located at no more than 54" from the ground to the operable controls and add striping to provide an ANSI compliant passenger loading zone parallel to the mailboxes.  Also add striping to provide an ANSI compliant passenger loading zone for parallel approach to one dumpster.

2.    Within nine (9) months of this Order, Defendants shall:

      a.    Hartman Lane

          1)    At the southeast and southwest breezeway of 1663, southeast and west breezeway at 1667, and the northwest and northeast breezeway at 1679 Hartman Lane, modify the ramp slopes to no more than 5% running;

          2)    At 1667 Hartman Lane, Defendants shall add a sidewalk connecting south east and west breezeway entrances on the south side of the building, with an access to parking area at south east location;

---

breezeway.  Unlike the mailboxes, which were non-compliant due to their height, the rent drop boxes were unusable only because they were located on an unaccessible route in the breezeway of 1667.  As Defendants have proposed to remedy the accessibility of the west breezeway, such remedies should also address the issues of the accessibility of the rent box.  No further action is needed to address the issues regarding the rent drop box as it is already located at an accessible height.  Therefore, the rent drop box may remain in the west breezeway of 1667.

3) At the southeast and southwest breezeway at 1663, provide ANSI compliant designated accessible parking space connected to new accessible breezeway entry at one building breezeway;

4) At one building breezeway at the southeast and west breezeway of 1667, provide ANSI compliant designated accessible partking space;

5) At the northwest and northeast breezeway entrance of 1679, provide ANSI compliant designated accessible parking space;

6) At the southeast and southwest breezeway of 1663, install ANSI compliant cane detection under stairs as well as install ANSI compliant cane detection for width of light fixture under each light;

7) At the southeast breezeway of 1667, install ANSI compliant cane detection under stairs;

8) At the southeast and west breezeway of 1667, install ANSI compliant cane detection for width of light fixture under each light;

9) At the northwest and northeast breezeway of 1679, install ANSI compliant can detection under stairs and install ANSI compliant can detection for width of light fixture under each light; and

b. Rockwood Apartments

1) At the north (Entry 3) and west (Entry 4) breezeway of Building

B remove step and ramp area between parking lot and breezeway;

2) At the west breezeway (Entry 1) of Building A, remove lip creating abrupt vertical rise in excess of 1/4" at entrance from parking area;

3) At the northwest (Entry 5) and northeast (Entry 6) breezeway at Building C, increase the size of the landing to 60" x 60";

4) At the northeast (Entry 6) breezeway at Building C provide handrails at sections of the ramp in excess of 5% running slope;

5) At the south or east side of Building A, the north side of Building B, the north side of Building C, and the northwest side of Building D, provide ANSI compliant designated accessible parking space; and

6) At all buildings, instill ANSI compliant cane detection for width of light fixture under each light and install ANSI compliant cane detection under stairs when underside is in accessible route to ground floor units.

3. Within one (1) year of this Order, Defendants shall:

a. Hartman Lane Apartments

1) In each ground floor unit, install lever hardware on exterior of the primary entry door;

2) In the ground floor apartments, modify all patio, bedroom, and

walk- in closet doors by installing a 2'10" door to provide a nominal clear opening of 32";

3) In the ground floor apartments, modify all bathroom doors by installing a door closest to 2'10" wide to create opening closest to 32" nominal. On all bathroom doors, install swing clear hinges or reduce thickness of casing as needed. Minimum clear opening on bathroom door shall be 29";

4) In all ground floor units at primary entry doors, raise breezeway level to height of first step at breezeways to eliminate step change of level;

5) In all ground floor units, lower thermostats so operable controls are no higher than 48" AFF;

6) For all covered units, maintain and replenish supply of ten (10) sets of "wing-it" surface mount grab bars to be installed on request at no expense to resident. The ten (10) sets shall be shared with Rockwood Apartments;

7) In all ground floor bathrooms, modify depth of wing wall to no more than 24" from rear wall to provide centered parallel approach at lavatory and sufficient clear floor space at toilet.

b. Rockwood Apartments

1) In the ground floor units, install lever hardware on exterior of the primary entry door;

2)    On all one bedroom ground floor units, modify the bedroom door and walk-in closet door by installing 2'10" door to provide nominal clear opening of 32". Also on all one bedroom ground floor units, modify bathroom door by installing door closest to 2'10" wide to create opening closest to 32" nominal. Install swing clear hinges or reduce thickness of casing on the bathroom door as needed. Minimum clear opening on bathroom door shall be 29";

3)    In the two bedroom ground floor units, modify hall bedroom and hall walk-in closet doors by installing 2'10" door to provide nominal 32" opening. Modify hall bathroom door by installing door closest to 2'10" wide to create opening closest to 32" nominal. Install swing clear hinges on the bathroom door or reduce thickness of casing as needed. Minimum clear opening on the bathroom door shall be 29";

4)    In all ground floor units at the primary entry doors, install an accessible extruded aluminum retrofit threshold ramp extension to the existing threshold;

5)    In all ground floor units where thermostat operable controls are mounted higher than 54" AFF, lower thermostat so operable controls are no higher than 48" AFF;

6)    For all covered units, maintain and replenish supply of ten (10)

sets of "wing-it" surface mount grab bars to be installed on request at no expense to resident.  The ten (10) sets shall be shared with Hartman Lane Apartments.

7)    In the one bedroom ground floor unit bathrooms, modify the depth of wing wall to no more than 24" from rear wall to provide centered parallel approach at lavatory and sufficient clear floor space at toilet.

8)    In the two bedroom ground floor unit hall bathroom, reverse the swing of the bathroom door to provide a 30" x 48" clear floor space.  Defendants shall also install a vanity top with an offset sink to provide 24" from centerline of sink to sidewall.

4.    It is further ordered that within 30 days from the date of this Order, the Defendants shall provide written notice to every tenant in a ground floor dwelling that the accessibility modifications ordered by this Court in paragraph 3, above, can be installed in their unit upon request within thirty (30) days and at no cost to them, and that the scheduling of the modifications will take into account his or her preferences and convenience.  Thereafter, Defendants shall make such modifications within thirty (30) days provided that all such retrofits shall be completed within one year of this Order, regardless of whether there has been a request, as required by paragraph 3.

5.    It is further Ordered that within sixty (60) days, the parties shall recommend to the Court a neutral inspector, to be compensated by the Defendants, who

can verify that *all* the retrofits have been performed appropriately.  Defendants shall permit the United States and its expert, at the United States' expense, to accompany the neutral inspector, and, upon reasonable notice, to enter onto the properties to verify that retrofits have been made appropriately and in a timely manner.

6.    The Court further **ORDERS** the Clerk to enter judgment reflecting the same.

**IT IS SO ORDERED.**

Signed this 17th day of March. 2010

/s/  *David R Herndon*
**Chief Judge**
**United States District Court**